**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roberta Lynn Bromley,<br><br>                     Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security Administration,<br><br>                     Defendant. | No. CV-12-00240-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Roberta Bromley, which challenges the Social Security Administration's decision to deny benefits. (Doc. 17.) For the reasons set forth below, the Court vacates that decision and remands for further administrative proceedings.

**BACKGROUND**

**I.     Procedural Background**

In August 2007, Bromley applied for disability insurance benefits, alleging a disability onset date of January 20, 2005. (R. at 17.) Bromley's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which she must have been disabled, was December 31, 2009. (*Id.* at 19.) Bromley's claim was denied both initially and upon reconsideration. (*Id.* at 17.) Bromley then requested a hearing before an Administrative Law Judge ("ALJ") on June 9, 2008. (*Id.*) The ALJ conducted a hearing on the matter on December 7, 2009. (*Id.*)

In evaluating whether Bromley was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (*Id.* at 17–19.) At step one, the ALJ determined that Bromley had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 19.) At step two, the ALJ determined that Bromley suffered from the severe impairments of status post left Achilles tendon transfer, fibromyalgia, chronic obstructive pulmonary disease ("COPD") / asthma, and low back pain. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.* at 21.)

At that point, the ALJ made a determination of Bromley's residual functional capacity ("RFC"),[2] concluding that Bromley could perform light work as defined in 20 CFR 404.15676(b) in that she was able to lift and/or carry at least twenty pounds

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

- 2 -

occasionally and ten pounds frequently, stand and/or walk six hours during an eight-hour workday, and sit six hours during an eight-hour workday. (*Id.*) However, the ALJ determined that Bromley had limited pushing/pulling ability in her upper and lower extremities and that she could never climb ladders, ropes, or scaffolds and could only occasionally climb ramps or stairs, crouch, or crawl, and that she should avoid concentrated exposure to extreme heat or cold, and even moderate exposure to fumes, odors, dust or gases, and industrial hazards. (*Id.*) The ALJ thus determined at step four that Bromley retained the RFC to perform her past relevant work as a retail sales worker and house cleaner. (*Id.* at 23.) The ALJ therefore did not reach step five. (*Id.*) Given this analysis, the ALJ concluded that Bromley was not disabled. (*Id.* at 24.)

The Appeals Council declined to review the decision. (*Id.* at 1.) The Council accepted the ALJ's statements of the law, the issues in the case, and the evidentiary facts, as well as the ALJ's findings and ultimate conclusions regarding whether Bromley was disabled. (*Id.* at 1–2.) The Council thereupon agreed that Bromley was not disabled. (*Id.*)

Bromley filed the complaint underlying this action on February 3, 2012, seeking this Court's review of the ALJ's denial of benefits.[3] (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 17, 19, 26.) Bromley asserts three grounds of error for reversing the ALJ's decision: (1) the ALJ wrongly applied a Step 3 analysis at the Step 2 stage and failed to consider non-severe impairments in evaluating Bromley's RFC, (2) the ALJ failed to give sufficient weight to the opinion of Dr. Mertins, Bromley's treating physician, and (3) the ALJ wrongly discounted Bromley's subjective testimony of her own symptoms. (Doc. 17 at 14–26.)

## II.     Factual Background

Bromley asserts that she suffers from fibromyalgia, COPD, left Achilles tendon transfer, back and neck pain, and depression and anxiety. (Doc. 17 at 1.) Bromley

---

[3] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

testified at the hearing that she felt an "irritating, aching" pain all over her body. (R. at 34.) She also testified that she was depressed, and that while medication helps to a degree, she still suffers from depression symptoms. (*Id.* at 35.) However, she testified that she no longer sees a therapist because she thinks "they're all quacks." (*Id.* at 36.) She also testified that she frequently gets panic attacks, causing her to have to lie down, and that she took medication for the attacks, but only when it was "really bad enough." (*Id.* at 37.) However, once she took the medication, it "help[ed] a lot." (*Id.* at 38.) She testified that she had COPD which caused her to walk more slowly, and that she smoked a pack of cigarettes a day. (*Id.*) She also testified about her ankle pain, for which she underwent surgery, and stated that she could only stand for fifteen minutes and walk for half an hour. (*Id.* at 40.) She further stated that because of her back and shoulder pain, she could only sit for about twenty minutes and could not lift more than ten pounds. (*Id.* at 40–41.)

       Bromley was diagnosed with fibromyalgia in 1999 or 2000. (*Id.* at 33.) She testified that she suffers the most pain in her lower and middle back, but she also feels it in her hands, arms, neck, and head. (*Id.*) Dr. Thomas Mertins was Bromley's primary treating physician throughout her period of disability. (*Id.* at 35.) Medical notes from the Union Hills Family Medicine, where Dr. Mertins and other physicians treated Bromley, assess her as having fibromyalgia, depression, anxiety, panic attacks, COPD and asthma, and knee pain. (*Id.* at 203, 211–212, 215, 222, 228, 309, 311.) Dr. Mertins prescribed Bromley a variety of medications to alleviate her mental and physical ailments, including muscle relaxers, pain medication, and anti-depressants. (*Id.* at 35.) The notes show that Bromley's reactions to medication were varied—some appeared to be working well for a period, but Bromley would then experience a negative reaction and have to stop the medication and switch to a new one. (*Id.* at 306–07, 309, 313, 316, 320.) Dr. Mertins twice opined that Bromley was unable to work a full workweek in June 2008 and September 2009. (*Id.* at 413–14, 494–46.) Both times he indicated that her back and arm pain prevented her from working. (*Id.*)

Bromley was also treated by several mental health specialists for her depression and anxiety. Bromley saw Dr. Shelley Kaufman for a month from June 2007 to July 2007. (*Id.* at 452–63.) Dr. Kaufman diagnosed Bromley with depression (dysthymic disorder) and panic disorder. (*Id.* at 462.) She prescribed a course of individual therapy for Bromley, which Bromley apparently followed for a month. In July, however, Bromley chose to end the treatment, stating that her treatment goals had been met. (*Id.* at 452.) Bromley returned to Dr. Kaufman in October 2008, describing a "severe episode of mood disturbance." (*Id.* at 567.) By December 2008, Dr. Kaufman reported that Bromley had made "emotional gains" and was "very happy that her son ha[d] moved into her home." (*Id.* at 571.)

At approximately the same time that Bromley initially saw Dr. Kaufman for her depression, Bromley also saw Dr. Richard Schaeffer, a psychiatrist, in the middle of 2007. Dr. Schaeffer noted Bromley's anxiety, panic attacks, and depersonalization. (*Id.* at 271.) Bromley continued to see Dr. Schaeffer for a few months until August 2007. (*Id.* at 268.) He prescribed her several medications. (*Id.*) Unfortunately, much of Dr. Schaeffer's records consist of illegible handwritten notes, and thus cannot be taken into consideration on review of the ALJ's decision. (*See id.* at 268–73.)

At the request of the Social Security Administration, Bromley saw Dr. William Chaffee for a physical consultative examination on October 17, 2008. (*Id.* at 251.) Dr. Chaffee diagnosed Bromley with probable COPD, chronic depression, polymyalgias, and chronic foot pain. (*Id.* at 254.) Given these diagnoses, Dr. Chaffee opined that Bromley would be able to stand and walk up to six hours in an eight-hour workday, sit up to six hours in an eight-hour workday, and lift and carry fifty pounds occasionally and twenty pounds frequently. (*Id.*) He found that Bromley did not need an assistive device and that she had no manipulative limitations, but found that she had environmental limitations due to her COPD, requiring that she avoid dust and fumes and extreme temperatures. (*Id.*) However, he qualified his analysis by stating that Bromley "has a chronic depression which makes evaluation of her physical limits difficult." (*Id.* at 255.)

**DISCUSSION**

**I.   Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Harmless errors in the ALJ's decision do not warrant reversal. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055–56 (9th Cir. 2006). Errors are harmless if they are "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, an error is harmless if the record shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's decision." *Id.* "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).

## II. Analysis

Bromley argues that the ALJ erred by: (A) failing to consider the combined effect of her mental impairments with her other impairments (Doc. 17 at 14–20), (B) failing to properly weigh medical evidence and opinion evidence (*id.* at 20–23), and (C) failing to properly weigh subjective complaints (*id.* at 23–26). The Court will address each argument in turn.

### A. Failure to Consider Mental Impairments

Bromley's argument on this prong is two-fold: she contends that the ALJ (1) wrongly determined that her mental impairment was not severe by mistakenly applying the Step 3 analysis at the Step 2 stage, and (2) failed to take her mental impairment into account when determining her RFC.

20 CFR § 404.1520(a)(4) differentiates between the second and third steps of the disability determination. At issue in the second step is "the medical severity of [the claimant's] impairment(s)." 20 CFR § 404.1520(a)(4)(ii). The ALJ must determine whether an impairment is severe before moving onto the next step. She may "find an impairment not severe 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Wick v. Barnhart*, 173 F. App'x 597, 600 (9th Cir. 2006) (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)). If none of the claimant's impairments are severe, then she is not disabled. 20 CFR § 404.1520(c). If an impairment or combination of impairments is severe, however, then the analysis proceeds to the third step, where the ALJ determines whether the severe impairment "meets or equals" one of the specific impairments described in 20 CFR Part 404, Subpart P, Appendix 1. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing 20 CFR § 404.1520(d)).

Here, the ALJ found that Bromley suffered from multiple severe impairments, but that her mental impairments of anxiety and bipolar/depression were not severe. (R. at 20.) In determining that her mental impairments were not severe, she relied on the functional areas set out for evaluating mental disorders in 20 CFR Part 404, Subpart P, Appendix 1.

(*Id.*) Thus, the ALJ applied the Step 3 analysis to determine, at Step 2, whether Bromley's mental impairments were severe. However, this error is harmless if the ALJ would have reached the determination that Bromley's mental impairments were non-severe even without relying on the functional areas in Appendix 1. *See Molina*, 674 F.3d at 1115. The evidence provided by the ALJ in discussing Step 2 shows that the ALJ would, in fact, have reached the same determination that Bromley's mental impairments were not severe.

Aside from the Step 3 analysis, the ALJ also stated that Bromley "responded well to treatment" and that "her symptoms abated within months of treatment" as reasons for finding that her mental impairments did not cause more than minimal limitation on her ability to perform basic mental work activities. (R. at 20.) The record indicates that, in July 2007, Bromley's treating psychologist stated that her "treatment goals had been met" and that Bromley was thus terminating her therapy sessions. (*Id.* at 567.) Dr. Kaufman's later notes in 2008 also indicate that Bromley was stable with "emotional gains." (*Id.* at 571.)

In addition, though the ALJ erroneously applied the framework of Step 3 in Step 2, the facts on which she relied in that analysis support her finding that Bromley was not severely impaired by her anxiety and depression. For example, Bromley was able to perform daily activities like housework, caring for the pets, and making supper. (*Id.* at 128, 160.) She also looked after her husband, went shopping, went out for coffee, attended social functions, and volunteered weekly at a store. (*Id.* at 129, 131–32.)[4]

Bromley argues that that the ALJ incorrectly found that she did not suffer any mental health issues after February 2008. (Doc. 17 at 16.) Bromley cites to portions of the

---

[4] The Commissioner cites to a host of other records which he claims also support the ALJ's finding that Bromley's mental impairments were not severe. (Doc. 19 at 11–12.) However, an ALJ's decision may not be justified by "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking" on appeal. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). There is no indication that the ALJ relied on any of the evidence cited by the Commissioner. As such, the Court will not consider it on review.

record which she claims show that she continued to manifest symptoms of depression and anxiety after February 2008. (*Id.*) However, none of the evidence to which she cites actually addresses her depression or anxiety. Even if the ALJ was wrong to conclude that Bromley did not suffer mental health issues after February 2008, it would not preclude a finding that Bromley's mental impairments were not severe. The records discussed above from Bromley's treating psychologist and of Bromley's unhampered household and social activities are enough that a reasonable person could accept them as sufficient evidence for supporting the ALJ's conclusion. Moreover, the ALJ found that Bromley had other severe impairments, namely, her Achilles tendon transfer, fibromyalgia, COPD, and low back pain. (R. at 19.) As such, the ALJ was precluded from making a finding that Bromley was not disabled on this step. Thus, though the ALJ erred in applying a Step 3 analysis at the Step 2 stage, the error was harmless and not grounds for reversing the ALJ's decision. *See Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed. App'x. 60, 61 (9th Cir. 2010) (holding that an ALJ's determination that certain impairments were nonsevere is harmless if the ALJ concluded that other medical problems were severe impairments).

However, Bromley also argues that the ALJ erred by failing to consider her mental impairments in determining her RFC. In making the RFC determination, the ALJ is required to consider both severe and non-severe impairments. 20 CFR § 404.1545(a)(2). However, the ALJ did not mention Bromley's mental impairments at all. (R. at 21–23.) The ALJ made no attempt to explain her failure to take Bromley's depression and anxiety into consideration. Because there is "simply nothing in the record for the [C]ourt to review to determine whether the ALJ's decision was adequately supported," this cannot be said to be harmless error. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008). As such, the ALJ's failure to take Bromley's mental impairments into account in making the RFC determination is grounds for remanding the ALJ's determination.

/ / /

/ / /

### B. Failure to Accord Adequate Weight to Treating Physician Opinion

"The medical opinion of a claimant's treating physician is entitled to special weight." *Walter v. Astrue*, No. CV-09-1016-PHX-GMS, 2010 WL 1511666 at *7 (D. Ariz. Apr. 15, 2010) (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989)) (internal quotations omitted). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). If the treating physician's opinion is supported by the record and not inconsistent with other evidence, it is accorded controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

Here, the ALJ accorded lesser weight to Dr. Mertins' opinion that Bromley was unable to work due to her back, arm, and foot pain and inability to sustain prolonged standing. (R. at 23.) The ALJ's reasons for rejecting Dr. Mertins' opinion were that it was contradicted by (1) the opinion of Dr. Chaffee, an examining physician, (2) Bromley's "activities of daily living," and (3) "other evidence including [Bromley's] 2007 recovery from surgery." (*Id.*) The ALJ also noted that, while Bromley was diagnosed with fibromyalgia in 1989, she continued working until January 2005, the alleged disability onset date. (*Id.*)

As stated above, Bromley saw Dr. Chaffee in October 2008 for a one-time consultative examination at the request of the Social Security Administration. (R. at 251.) Dr. Chaffee performed an independent physical examination on Bromley and assessed that her general physical condition was normal and that her range of motion was within normal limits. (*Id.* at 253–54.) He concluded that she was capable of working a normal eight-hour work day subject to some limitations. (*Id.* at 254–55.) His findings contradict

the opinion of Dr. Mertins, who twice concluded that Bromley was unable to work, and found much more severe limitations on Bromley's ability to sit, stand, walk, lift, or carry things during an eight-hour workday. (*Id.* at 414, 494.) Thus, the ALJ set out sufficient reason for not according controlling weight to Dr. Mertins' opinion. Furthermore, Dr. Chaffee's conclusion was based on "independent clinical findings that differ from those of the treating physician." *Andrews*, 53 F.3d at 1041. While Dr. Mertins found that Bromley was limited due to her back and arm pain, Dr. Chaffee's independent examination found that Bromley's shoulder, elbow, and wrist joints were all within normal limits of their range of motion. (R. at 254.) In addition, Dr. Chaffee concluded after "extensive examination" that Bromley could stand for up to six hours at a time and had no limitation on the number of hours she could sit in a normal eight-hour workday. These independent clinical findings are sufficient substantial evidence to justify the ALJ's decision to accord less weight to Dr. Mertins' opinion.

The ALJ also cited Bromley's daily activities as evidence contradicting Dr. Mertins' opinion. (*Id.* at 23.) The evidence on which she relied is the same as the evidence she considered in Step 2, i.e., evidence that Bromley could do housework, care for the pets, make supper, look after her husband, go shopping and out for coffee, attend social functions, and volunteer once a week. (*Id.* at 128, 129, 131–32, 160.) These activities are indicative of Bromley's ability to perform light work. For example, Bromley filled out a Function Report for the SSA stating that she was able to do laundry, ironing, dusting, cleaning bathrooms, and light vacuuming on a weekly basis. (*Id.* at 130.) She also wrote that she volunteered "at a store" once a week for three hours at a time, though she stated that when she did this she was "not working hard." (*Id.* at 132.) This evidence tends to show that Bromley's abilities were not as severely limited as set forth by Dr. Mertins. The ALJ's decision to place less emphasis on Dr. Mertins' opinion was thus also supported by this evidence of Bromley's day-to-day activities.

The ALJ also rejected Dr. Mertins' opinion because it was contradicted by "other evidence including [Bromley's] 2007 recovery from surgery." (*Id.* at 23.) The ALJ's

general reference to "other evidence" does not constitute "specific and legitimate reasons" for rejecting a treating physician's opinion. *See Orn*, 496 F.3d at 632. However, Bromley's 2007 recovery from surgery does contradict Dr. Mertins' opinion. Bromley underwent surgery for her ankle pain in 2006. (R. at 263–65.) Bromley reported feeling 50% to 60% better after her surgery. (*Id.* at 429.) This evidence tends to undermine Dr. Mertins' assessment that Bromley was unable to work due to foot pain. Thus, this is also a legitimate reason for the ALJ to give less weight to the limitations set out by Dr. Mertins on Bromley's ability to work.

Finally, in rejecting Dr. Mertins' opinion, the ALJ noted that though Bromley was diagnosed with fibromyalgia in 1989, she continued to work until January 2005. (*Id.* at 23.) Bromley asserts that her disability began in January 2005. (*Id.* at 17.) Evidence that Bromley's fibromyalgia, by itself, was not a limitation *before* the beginning of her disability is not evidence that contradicts the opinion of her treating physician regarding her combination of ailments *after* disability onset. Thus, Bromley's ability to work prior to January 2005 is not substantial evidence supporting the ALJ's decision to give less weight to Dr. Bromley's opinion.

Nevertheless, the ALJ relied on sufficient other evidence to justify her rejection of Dr. Mertins' opinion. The ALJ's decision to accord lesser weight to Dr. Mertins' opinion is supported by substantial evidence in the record and does not constitute grounds for vacating her ruling.

### C. Failure to Properly Weigh Bromley's Subjective Complaints

The ALJ must engage in a two-step analysis in determining whether a claimant's testimony regarding her subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If she has, and the ALJ has found no evidence of malingering, then the ALJ may

reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.*

The Commissioner disagrees that the appropriate standard for the ALJ in rejecting claimant testimony is one that requires clear and convincing reasons. (Doc. 19 at 17.) He relies on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), where the Ninth Circuit set out to "determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases." (*Id.* (citing *Bunnell*, 947 F.2d at 342).) The *Bunnell* Court opined that once there has been objective medical evidence of an underlying impairment, the ALJ must make specific findings, supported by the record, for why he rejected the claimant's testimony on the severity of the pain. 947 F.2d at 345–46. This is to ensure that the ALJ "did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Elam v. R.R. Retirement Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). Thus, the Commissioner claims that the standard governing credibility is a specific finding standard, which it claims is more in line with the overall "substantial evidence" standard that governs these cases.

Many panels of the Ninth Circuit have subsequently held, however, that if there is objective medical evidence of an underlying impairment, "and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036. The Commissioner claims that these cases have overruled the standard articulated in *Bunnell* in violation of the Ninth Circuit rule that only en banc panels can overrule existing precedent. (Doc. 19 at 17 (citing *United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995).) That is not the case. *Bunnell* articulated a general standard for dealing with claimant testimony. The many subsequent cases have addressed a subset of cases where there is no evidence of claimant malingering. They have articulated a

- 13 -

"clear and convincing" standard for those situations. Thus, the Court will apply that standard to the ALJ's determination.

Here, the ALJ found at the first step that Bromley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 23.) However, the ALJ rejected her statements concerning "the intensity, persistence and limiting effects of [her] symptoms" as "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (*Id.*) This general statement does not constitute "specific, clear and convincing reasons" for discounting Bromley's testimony. Indeed, the ALJ is required to consider Bromley's symptom testimony in making the RFC assessment. 20 CFR § 416.945(a)(3). "Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning" that cannot be sustained by this Court. *Leitheiser v. Astrue*, No. CV 10-6243-SI, 2012 WL 967647 at *9 (D. Or. Mar. 16, 2012).

Though the ALJ analyzed extensive medical records and written statements from Bromley regarding her daily activities, she did not explain how those activities contradicted Bromley's subjective symptom testimony. Though inconsistencies may exist in the record that justify the ALJ's rejection of the symptom testimony, it is the ALJ's job to offer "specific, clear and convincing reasons" for doing so. Without any indication of what part of the RFC assessment the ALJ relied on in determining that Bromley's testimony was inconsistent, the Court cannot be sure that the ALJ did not "arbitrarily discredit" Bromley's statements regarding her pain.

The Commissioner points to other evidence in the record which he claims supports the ALJ's finding that Bromley's subjective complaints were not credible. (Doc. 19 at 18–19.) However, the ALJ did not rely on this evidence in making her decision. The only rationale cited by the ALJ was that Bromley's complaints were inconsistent with her RFC determination. (R. at 23.) The Court must rely on "the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray*, 554 F.3d at 1225. The reasoning offered by the ALJ was not supported by substantial evidence, so the determination of non-disability will be vacated on this ground.

## III.   Remedy

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Here, the ALJ did not provide any legally sufficient reason for her failure to consider Bromley's non-severe mental impairment in determining Bromley's RFC. She also failed to give a legally sufficient reason for rejecting Bromley's subjective complaints regarding the intensity and limiting effect of her impairments. However, there are outstanding issues that must be resolved before a determination of disability can be made. The ALJ's consideration of Bromley's non-severe mental impairments in making an RFC determination would not necessarily lead to a finding that Bromley is disabled. In addition, Bromley's subjective complaints regarding her symptoms must be weighed against contradictory evidence in the record, like the opinion of Dr. Chaffee and her own reports of her daily activities.

As such, it is not "clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited," and there remain "outstanding issues that must be resolved before a determination of disability can be made." *Smolen*, 80 F.3d at 1292. Under these circumstances, the Court will remand for further proceedings.

- 15 -

**CONCLUSION**

The ALJ erred in failing to discuss Bromley's mental impairments in making the RFC determination and failing to set forth specific and legitimate reasons for rejecting Bromley's subjective complaint testimony.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED** and this case is **REMANDED** for further proceedings. The Clerk of Court is directed to enter judgment accordingly.

Dated this 8th day of April, 2013.

/G. Murray Snow
United States District Judge